UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

VIRGINIA BEACH RACQUET CLUB  :
NORTH ASSOCIATES, L.P.,      :
                             :
        Plaintiff,           :
                             :
v.                           :   ACTION NO. 2:11CV447
                             :
THE TRAVELERS INDEMNITY COMPANY OF :
CONNECTICUT,                 :
                             :
WILLIS OF VIRGINIA, INC.,    :
                             :
And SHIRLEY FOREHAND,        :
                             :
        Defendants.          :

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In this insurance dispute, Plaintiff, Virginia Beach Racquet Club North Associates, L.P. ("Racquet Club" or "the Club"), seeks to recover for losses incurred when its indoor tennis facility collapsed under the weight of heavy snowfall. Racquet Club sued Defendant, The Travelers Indemnity Company of Connecticut ("Travelers"), its insurer, as well as Willis of Virginia, Inc. ("Willis") and Shirley Forehand ("Forehand"), the broker and agent who procured the Travelers policy. The Club alleges that Willis and Forehand were negligent and thus liable for its losses "to the extent [those losses] are deemed not to be covered by Travelers and the Policy." (Complaint, ECF No. 1-1 at 11).

Travelers removed the case and filed a Motion to Realign Defendants Willis and Forehand, arguing the two defendants are more properly plaintiffs in the matter as their interest in the "primary and controlling issue in dispute are adverse to Travelers." (Def. Mem.

1

Supporting Realignment, ECF No. 3 at 1). Racquet Club opposes realignment and filed its own Motion to Remand (ECF No. 13) in which it disputes Traveler's characterization of the primary and controlling issue in the case. Both the Motion to Realign (ECF No. 2) and the Motion to Remand (ECF No. 13) have been referred to the undersigned for a Report and Recommendation. The motions were fully briefed, and the Court heard oral argument September 30, 2011. For the reasons which follow, the undersigned recommends the Court deny Traveler's Motion to Realign, and grant Racquet Club's Motion to Remand.

## I. FACTUAL AND PROCEDURAL HISTORY

As alleged in its Complaint, Racquet Club operates an indoor/outdoor tennis facility in Virginia Beach. Among its amenities the Club erected a "bubble" enclosure around several tennis courts to permit members to play tennis year round and in inclement weather. On January 30, 2010, the tennis bubble was severely damaged by heavy snowfall. The Club sought to recover damages for the loss from its insurer, Travelers, which assessed the damage and the cost of replacement and determined the Club was underinsured. As a result of this finding, Travelers paid only part of the available coverage pursuant to a co-insurance provision of the policy. Travelers' partial payment represents less than twenty percent of the Club's claimed losses. This lawsuit followed.

Racquet Club's Complaint, originally filed in Virginia Beach Circuit Court, seeks a declaration that the Travelers' policy provides coverage for the full amount of its losses; that Travelers' breached its contract by denying full coverage; and that its breach amounts to bad

faith warranting punitive damages.[1] The Complaint also includes detailed allegations against Defendants Willis and Forehand, accusing them of various breaches of duty in connection with procuring policies of insurance coverage for the Club, including the Travelers' policy at issue in the Complaint.

Travelers removed the case to this Court and filed a simultaneous Motion to Realign the Parties, recognizing that with Willis and Forehand as defendants federal jurisdiction is lacking. Racquet Club opposed Travelers' motion and filed its own Motion to Remand and Motion to Dismiss. Willis and Forehand, by counsel, appeared for oral argument, but neither join in nor oppose the other parties' requests for relief.

## II. ANALYSIS

Willis and Forehand are citizens of the Commonwealth, like the Plaintiff, Racquet Club. As a result, their presence as defendants prevents the complete diversity necessary for jurisdiction under 28 U.S.C. § 1332. In order to remove the case Travelers asks the Court to realign the parties, making Willis and Forehand plaintiffs.

As the party seeking removal, Travelers bears the burden of establishing diversity jurisdiction exists. Dixon v. Colberg Dairy, Inc., 369 F.3d 811, 815 (4th Cir. 2004) (en banc). The Court must construe removal jurisdiction strictly and, where federal jurisdiction is doubtful, remand to state court. Id. at 816. However, the parties' own characterization of which of them are plaintiffs and which defendants is not controlling. When that alignment is challenged, the Court must first determine the primary issue in controversy, and then align the parties according

---

[1] Travelers separately moved to dismiss Count IV of the Complaint which alleges bad faith and seeks punitive damages (ECF No. 7). The motion to dismiss was also referred to the undersigned for a Report and Recommendation. (ECF No. 31). This Court has previously ruled that Virginia's statutory remedy for an insurer's bad faith breach of contract does not alter the general rule that a contract action will not support a claim of punitive damages. TIG Ins. Co. v. Alfa Laval, Inc., No. 3:07cv683, 2008 WL 639894. However, as the undersigned recommends the case be remanded due to a lack of subject matter jurisdiction, this report recommends the Court take no action on Traveler's Motion to Dismiss, reserving its resolution to the Virginia Beach Circuit Court.

3

to their positions with respect to that primary issue. Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69, 62 S.Ct. 15, 17 (1941), U.S. Fid. & Guar. Co. v. A&S Mfg. Co., 48 F.3d 131, 133-134 (4th Cir. 1995).

The parties largely agree on this jurisdictional framework. Their dispute centers on defining the primary issue in controversy. Travelers claims the primary issue is coverage under its policy and, with respect to that issue, Willis and Forehand are properly aligned with Racquet Club as coverage under the policy would mitigate or eliminate their exposure on the negligence claims. Racquet Club notes that its claims against Willis and Forehand allege an altogether different theory of liability. It argues that a host of legal and factual issues might leave any of the three defendants liable for some portion of its claims. After reviewing the pleadings in detail, the undersigned concludes that the primary issue in controversy in this lawsuit is which of the three defendants (if any) are responsible for Racquet Club's alleged underinsurance. On that primary issue, the parties were properly aligned in Virginia Beach Circuit Court, where they should litigate the balance of this claim.

In determining the primary issue in controversy, "[a]ntagonism between the parties should be resolved by the pleadings and the nature of the controversy." U.S. Fid. & Guar. Co., 48 F.3d at 134. In many insurance coverage actions, the primary (and sometimes only) issue in controversy is the scope of an insurer's duties under disputed policy language. Nationwide Mut. Ins. Co. v. 1400 Hampton Blvd., LLC, No. 2:10cv310, 2010 WL 5476748, (E.D. Va. Dec. 2, 2010); Marsh v. Cincinnati Ins. Co., No. 4:08cv2441, 2008 WL 4614289, at *2 (D.S.C. Oct. 15, 2008); Universal Concrete Prod. Corp. v. Peerless Ins. Co., No. CCB-08-00317, 2008 WL 4104171, at *4 (D. Md. Aug. 11, 2008).

This case, however, is not a typical coverage action. To begin with, this is a first party claim for additional coverage on a covered loss. Travelers does not dispute that it owed coverage, only the amount of its coverage. This fact helps illuminate the actual issue in controversy – responsibility for the alleged underpayment.

In the Complaint, Racquet Club lays the blame for its alleged lack of coverage equally (albeit alternatively) on Willis, Forehand and Travelers. For example, its Complaint states that Willis and its agents represented the ability to ensure "appropriate and adequate coverage for the needs and operations of the Racquet Club." (Compl. ¶ 10). It claims that Willis and Forehand did not "undertake any effort to determine whether the value of the Tennis Facility had increased . . . or was otherwise accurately reflected in the Policy Statement of Values and adequately insured." (Compl. ¶ 12). The pleading alleges Willis and Forehand denied Racquet Club a reasonable opportunity "to communicate a need to change or otherwise modify the terms of coverage" and had they not done so, the Club "would have requested changes to the Policy so as to afford complete coverage for the tennis facility." (Compl. ¶¶ 14 – 15). These alleged failures (all of which the defendants have denied) resulted in "inconsistencies and ambiguities in the Policy." (Compl. ¶ 16).

As for Travelers, Racquet Club's claims are not rooted exclusively in the Policy language. The Club contends Travelers sent an estimator to the tennis facility who prepared a replacement cost proposal which was "almost double" the initial estimates obtained by Racquet Club. This "inflated" proposal led Travelers to incorrectly determine the facility was underinsured, thus, triggering (or perhaps only exacerbating) its underinsurance. (Compl. ¶¶ 25 – 27).

These allegations, which constitute the bulk of the factual material alleged in the Complaint, do not present a controversy concerning the meaning of policy language. Rather, they present a fact-intensive dispute about the degree to which any of these parties bears responsibility for the underinsurance alleged. In addition, they plainly illustrate that Willis and Forehand might be held liable even if Travelers owed additional coverage. Moreover, they demonstrate why Willis and Forehand were properly made defendants in the original Complaint. While the two may benefit from a finding that Travelers is liable they must also defend a separate cause of action, as to which Travelers' liability is only one defense. See Lexcorp v. Western World Ins. Co., No. 4:10cv27, 2010 WL 3855305 (W.D. Va., Oct. 1, 2010).

Diversity jurisdiction requires a substantial controversy between citizens of different states "all of whom on one side of the controversy are citizens of different states from all parties on the other side." Indianapolis, 314 U.S. at 69, 62 S.Ct. at 17. The controversy here is between Racquet Club and all of the Defendants, two of whom are citizens of Virginia. Their dispute with the Club precludes a finding of subject matter jurisdiction. The parties were properly aligned in state court. That alignment necessitates remand.

### III. RECOMMENDATION

For the foregoing reasons the undersigned recommends the Court DENY Traveler's Motion to Realign, and GRANT Racquet Club's Motion to Remand. Because the undersigned has concluded that the Court lacks diversity jurisdiction, and no other basis for subject matter jurisdiction is alleged or shown, the undersigned also recommends that the Court decline to rule on Travelers' Motion to Dismiss Count IV of the Complaint. See A.W. ex rel. Wilson v. Fairfax County School Bd., 584 F. Supp. 2d 219, 225 (E.D. Va. 2008) (declining to reach alternative basis for dismissal based on lack of subject matter jurisdiction).

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

October 12, 2011